IN THE COURT OF COMMON PLEAS
DELAWARE COUNTY, OHIO

NANCI L. DANISON
5171 Reserve Dr.
Dublin, OH 43017-8400,

    Plaintiff,

vs.

SLEEP NUMBER CORPORATION
DUBLIN-SAWMILL STORE
6465 Sawmill Rd.
Dublin, OH 43017,

    Defendant.

Case No. **20-CVB-120570**

Judge __JAMES P. SCHUCK__

## COMPLAINT WITH JURY DEMAND

1. Plaintiff, Nanci Danison, resides in Delaware County, Ohio. The causes of action herein arose in Delaware County.

2. Defendant Sleep Number Corporation manufactures Sleep Number brand beds and bedding for introduction into trade or commerce. Defendant Dublin Store sells the beds and bed components in consumer transactions at its Sawmill Road, Dublin, OH, retail store.

3. Plaintiff visited Defendant Store at 10:00 am on December 2, 2019, to purchase a replacement for her existing Sleep Number mattress. She informed the two saleswomen who assisted her of that intention and asked about the c2 360 Smart Bed features.

4. The second saleswoman printed out two "Customer Quotes" for c2 360 Smart Bed components—the first for the mattress and remote control only, and the second for a complete bed and remote control. Plaintiff took both quotes home to consider her options. No other paperwork was offered to Plaintiff before she left Defendant Store.

5. Plaintiff called the second saleswoman that same afternoon, December 2nd, and

offered to buy the complete c2 bed as listed on the second Customer Quote. Using the credit card information Plaintiff provided over the telephone, Defendant Store accepted the offer by charging the agreed upon purchase price to Plaintiff's MasterCard at 3:54 pm that day.

6. The first c2 bed was delivered to Plaintiff's home on December 12, 2019, by Defendant Store's employed technicians. That bed's components stunk so horribly that Plaintiff rejected delivery and demanded they be removed from her home.

7. A second c2 bed was delivered to Plaintiff's home on December 18, 2019, by Defendant Store's employed technicians. Plaintiff discerned no obvious odor, so accepted delivery of everything but the frame. Defendant Store's employees assembled the bed components and set up the new c2 mattress in the first floor Master Bedroom on top of Plaintiff's existing Sleep Number Flex Fit adjustable platform. They set up the new Integrated Base (like box springs) and her old Sleep Number mattress in a second-floor bedroom.

8. One of Defendant Store's technicians advised Plaintiff not to sleep on the mattress for a few nights because it would offgas smelly chemicals for a few days. Plaintiff never got the chance to sleep on the new mattress.

9. Plaintiff discovered when she returned home around 10:00 pm on December 19, 2019, that the new c2 bed components had offgassed copious quantities of noxious chemical fumes since delivery the previous day. The fumes and acrid smell filled the entire first floor of her home. This initial offgassing was followed by offgassing waves of two other, different smelling, chemicals that filled the first and second floors of Plaintiff's home like a fog. The chemicals burned Plaintiff's throat and lungs, gave her a headache, and caused her to wheeze and cough for months. The only way Plaintiff could physically remain in her home was to seal off the Master Bedroom, with its windows wide open and air purifiers running, and sit in the basement or on the second

floor beneath an open window, despite the freezing outside temperature.

10. Plaintiff called Defendant's Customer Service number several times between December 19, 2019 and January 7, 2020 and informed Defendant's employees of the facts stated in paragraph 9 above. She asked how to get rid of the chemicals. Defendant's employees repeatedly assured Plaintiff that the offgassing would be minimal and would stop on its own in a few days. Plaintiff relied on those representations to her detriment.

11. It took 19 days of repeated complaints about the chemicals, and pleading for help, to get Defendant Store to pick up the c2 bed. Its components were still excreting chemicals when they were removed on January 7, 2020. Defendant Store thereafter refunded Plaintiff's purchase money but ignored the damage the bed's offgassing has caused.

12. During the weeks that the Sleep Number mattress and base were offgassing, those chemicals were absorbed by various other types of porous materials within Plaintiff's home, including non-hardwood furniture and blinds, flooring, furnishings, electronics, bedding, clothing, and papers. These other materials created hundreds of additional sources of chemical offgassing and odors. The chemicals and foul odors also hung in the air like smoke odors linger after a fire.

13. Plaintiff called Defendant's corporate headquarters on January 13, 2020, seeking identification of the chemicals that were offgassing so that disaster recovery companies could apply the appropriate counteragents to neutralize the chemical fog hanging in the air and offgassing from hundreds of items in Plaintiff's home. She spoke a couple of times with a woman who admitted that Defendant has had problems in the past with its beds offgassing excessive chemicals because of packaging issues. This employee claimed that no one in the company could tell Plaintiff what the chemicals were. She later refused to send Plaintiff the Manufacturer's Safety Data Sheet listing the chemicals used in manufacturing. This employee implied that Plaintiff was lying about

3

the chemicals and/or is too stupid to be able to follow her nose to the source of the horrific, caustic, chemical smells coming from Defendant Store's bed components.

14. It took two disaster recovery and cleanup companies several months to clean Plaintiff's home and the air inside her home. The second company told Plaintiff the only way to completely get rid of the chemicals being offgassed was to get rid of every source that had absorbed them. Plaintiff spent months cleaning what could be cleaned. But she ended up throwing out numerous items of offgassing furniture, blinds, carpeting and padding, upholstered furniture, lamp shades and throw pillows, bedding, clothes, accessories, electronics, office supplies, kitchen pull-out drawers, and other belongings—in an attempt to rid her home of all sources of absorbed chemical fumes from the Sleep Number bed.

15. The offgassing of chemicals by Defendant's defective c2 bed, and the chemicals' absorption into hundreds of Plaintiff's house structure parts and belongings which then continued to offgas more of the chemicals, caused Plaintiff physical discomfort and triggered severe emotional distress. Plaintiff lost the use of the entire first floor of her home for months, including her office. She had to repeatedly scrub every item on the first floor, including floors, walls, and fixtures. She had to wear a face mask when walking around the first floor to try to diminish the quantity of fumes she inhaled. Plaintiff was terrified that the chemicals would give her lung cancer because she already has cancer. Plaintiff lost many beloved possessions. She had to have floors replaced during the pandemic, which caused incredible stress and fear of infection with COVID-19. Plaintiff felt violated and traumatized by the damage caused by Defendant Store's defective bed components.

## COUNT ONE

16. Paragraphs 1-15 are incorporated herein by reference.

4

17. Plaintiff asserts a strict liability claim against Defendant pursuant to the product liability claim provisions of Ohio Revised Code §§2307.73 and 2307.74 due to the defective construction and packaging of the two c2 beds it delivered to Plaintiff.

18. The c2 bed components manufactured by Defendant and delivered to Plaintiff were defectively manufactured to include an excessive concentration of volatile noxious chemicals that would naturally outgas when exposed to room temperature in Plaintiff's home. Those gases were further concentrated by the defective packaging in which Defendant Store chose to ship the bed components.

19. The c2 bed components manufactured by Defendant and delivered to Plaintiff were also defectively manufactured to include one or more chemicals that by nature would be absorbed into porous materials, like smoke from a house fire soaks into everything in the house.

20. Defendant is admittedly the manufacturer and Defendant Store is admittedly the retail seller of the bed components that damaged Plaintiff's health, peace of mind, home, and possessions. The c2 bed components were defective in manufacture or construction as defined in Ohio Revised Code § 2307.74 because when they left control of the manufacturer, *i.e.*, upon set up in Plaintiff's home, they deviated in a material way from the performance standards of the manufacturer as Plaintiff knows them from previous purchases.

21. The defective materials used in the composition of the bed components, the nature of the chemicals in those materials, and/or the defective packaging in which the bed components were shipped and delivered was the proximate cause of harm for which Plaintiff seeks to recover compensatory damages. The fumes soaked into and ruined numerous items in Plaintiff's home, as described above. The chemicals and odors made the first floor of Plaintiff's home uninhabitable for nearly a year. And the whole experience traumatized Plaintiff emotionally.

5

22. Pursuant to Ohio Revised Code §2307.72, Plaintiff seeks recovery of compensatory damages for emotional distress, physical damage to property Plaintiff owned that had to be thrown out, cleanup costs, disaster remediation costs, and the costs of buying replacement furniture and possessions totaling $75,000.00.

## COUNT TWO

23. Paragraphs 1 – 22 are incorporated herein by reference.

24. Plaintiff asserts a strict liability claim against Defendant pursuant to the product liability claim provisions of Ohio Revised Code §2307.77 because the c2 bed components sold and delivered to Plaintiff were defective when they left the control of Defendant manufacturer in that they did not conform to the many representations made by Defendant's and Defendant Store's employees that the offgassing of chemicals would be minimal and would stop within a few days.

25. The representations identified in paragraphs 8, 10, and 13 constitute an express representation of the c2 bed's quality and safety that was incredibly material to Plaintiff's decision whether to keep the bed longer. Plaintiff justifiably relied upon Defendant's representations, causing her to keep the offgassing bed for nearly three weeks, which directly and proximately resulted in the extensive damage to Plaintiff's home and possessions.

26. Pursuant to Ohio Revised Code §2307.72, Plaintiff seeks recovery of compensatory damages for emotional distress, physical damage to property Plaintiff owned that had to be thrown out, cleanup costs, disaster remediation costs, and the costs of buying replacement furniture and possessions totaling $75,000.00.

## COUNT THREE

27. Paragraphs 1 – 26 are incorporated herein by reference.

28. Plaintiff is entitled to exemplary or punitive damages pursuant to Ohio Revised

Code § 2307.80, in an amount to be set by the Court, because the harm to Plaintiff and her possessions was increased dramatically by the misconduct of Defendant's employees who manifested a flagrant disregard for Plaintiff's safety.

29. Plaintiff informed several of Defendant's employees that the chemicals were causing her physical and emotional distress. She described her symptoms to them, told them she has cancer, and said she was worried about damage to her lungs. Several of the Customer Service employees admitted that the beds do outgas noxious chemicals. Plaintiff had extensive conversations with the woman mentioned in paragraph 13, in which Plaintiff emphasized the risk to her safety that the offgassing posed. Not one of Defendant's employees showed the least bit of concern for Plaintiff's health or safety.

WHEREFORE, Plaintiff, Nanci L. Danison, demands compensatory damages of $75,000.00 from Defendant, Sleep Number Corporation Dublin-Sawmill Store, together with exemplary or punitive damages in an amount to be set by the Court, costs of suit, including attorneys' fees and court costs, and such other and further relief to which Plaintiff may be entitled.

/s/ *Nanci L. Danison, Esq. (0017388)*

Attorney for Plaintiff, Pro Se
PO Box 340292
Columbus, OH
(614) 798-1998
ndanison@sbcglobal.net

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

/s/ *Nanci L. Danison, Esq. (0017388)*